UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
LUCAS DECRAENE,                                             :
                                                            :
                           Plaintiff,                       :
                                                            :
        -against-                                           :
                                                            :
NEUHAUS (U.S.A.), INC.,                                     :    04 Civ. 2876 (GEL)
NEUHAUS N.V., GUY PACQUOT,                                  :
CLAUDE EMERY, CLEMENTINE                                    :    **ORDER AND OPINION**
LOEHMAN, WALTER SEROW,                                      :
MARIE COLES, JOS LINKENS,                                   :
MARLENE VONKEN, LUDO MANS,                                  :
MAHBOUB BAKHTIARI, and                                      :
VALERIE NAGLEY,                                             :
                                                            :
                           Defendants.                      :
                                                            :
------------------------------------------------------------x

Lucas Decraene, pro se.

Michael Mosscrop, Esq., Sawyer, Halpern & Demetri, Garden City, New York, for defendants Neuhaus (U.S.A.), Inc., Neuhaus, N.V., Claude Emery, Walter Serow, Clementine Loehman, Marlene Vonken, Guy Pacquot, Marie Coles, and Jos Linkens.

GERARD E. LYNCH, District Judge:

  Plaintiff Lucas Decraene, proceeding pro se, brings suit against his former employer, Neuhaus (U.S.A.), Inc. ("N-US"), its parent company, Neuhaus N.V. ("N-NV"), and related defendants for various torts, breach of contract, violation of the Fair Labor Standards Act, 29 U.S.C. § 207 ("FLSA"), and mismanagement of a publicly owned and traded company. Defendants N-US, N-NV, Claude Emery, Walter Serow, Clementine Loehman, Marlene Vonken, Guy Pacquot, Marie Coles, and Jos Linkens (collectively, "defendants") now move to dismiss

plaintiff's Amended Complaint in its entirety. As will be seen below, defendants Mahboub Bakhtiari and Valerie Nagley are dismissed from this action at plaintiff's request. The remaining defendant, Ludo Mans, has not been served. Defendants' motion will be granted in part and denied in part.

## BACKGROUND

For purposes of this motion, the facts alleged in plaintiff's Amended Complaint must be taken as true, and all reasonable inferences must be drawn in the plaintiff's favor. Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 216 (2d Cir. 2004); Bolt Elec. Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995). Moreover, a pro se plaintiff's papers are to be read "liberally and [interpreted so as to] raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994), citing Mikinberg v. Baltic S.S. Co., 988 F.2d 327, 330 (2d Cir. 1993). Plaintiff has supplemented those facts alleged in the Amended Complaint with an affirmation dated September 8, 2004 and annexed to the Amended Complaint. On a motion to dismiss, a court may properly consider documents attached to the complaint as exhibits or incorporated in it by reference, Brass v. American Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993), and where the plaintiff is proceeding pro se, "courts may look to submissions beyond the complaint to determine what claims are presented." Boguslarsky v. Kaplan, 159 F.3d 715, 719 (2d Cir. 1998).

Decraene, a Belgian citizen, was employed by N-US, a fully-owned subsidiary of N-NV, a Belgian chocolatier, in its retail store in Plano, Texas, between late summer 2001 and early 2002. Decraene claims that he was often required to work overtime as a result of continual problems with the management and staffing of the store, and that he was never compensated for

this overtime. (Decraene Aff. ¶ 7.) In addition, Decraene claims that defendant Ludo Mans, then-chief executive officer of N-US, ordered him to fix the store's books and to create deposits in N-US's accounts to mislead the Belgian parent company about the performance of its United States subsidiary. (Id. ¶¶ 21–22.) In actuality, Decraene claims, customers were not billed for certain orders, and a large volume of corporate sales for the 2001–2002 holiday season (approximately three tons of boxed chocolates) went unfilled after his termination, losing money for the company and depriving Decraene of his commission on those orders. (Id. ¶¶ 16, 18.)

Decraene's employment was terminated on January 5, 2002. His termination letter, signed by Mans and countersigned by Decraene, indicated that he was being terminated because of his "theft from our company and fraudulent activity involving our accounts." (Compl. Ex. A, at 1.) These allegations appear to correspond to the account doctoring and unbilled and/or unfilled orders described above, for which Decraene claims he was not culpable. Mans and Claude Emery, an executive vice-president of N-US, filed charges against Decraene with the Plano Police Department in accordance with the allegations of theft and fraudulent accounting in the termination letter. (Decraene Aff. ¶ 23.) Upon investigation, the district attorney declined to bring a case against Decraene, and a federal investigation into the allegations was similarly dropped. (Id.)

Decraene commenced this action by filing his original Complaint with the *pro se* office of this Court on February 13, 2004. After his application to proceed *in forma pauperis* was granted, the Complaint was filed with the Clerk of the Court on April 14, 2004. An Amended Complaint was filed on September 13, 2004. As amended, the Complaint states seven causes of action in connection with the events outlined above: (1) libel; (2) slander; (3) intentional infliction of

emotional distress; (4) breach of contract; (5) wrongful discharge; (6) violation of the FLSA; and (7) mismanagement of a publicly owned and traded company.

## DISCUSSION

Defendants now move to dismiss the Amended Complaint in its entirety, citing the Court's lack of personal jurisdiction over defendants Vonken and N-NV and plaintiff's failure to state a claim as to all causes of action.

In his response to this motion, Decraene concedes that his first, second, third, and fifth causes of action should be dismissed as against all defendants and that his fourth, sixth and seventh causes of action should be dismissed as against defendants Nagley and Bakhtiari. Accordingly, the plaintiff's first (libel), second (slander), third (intentional infliction of emotional distress), and fifth (wrongful discharge) causes of action will be dismissed in their entirety, and his fourth (breach of contract), sixth (FLSA violations), and seventh (mismanagement of a publicly owned and traded company) causes of action will be dismissed as to Nagley and Bakhtiari.

Decraene further requests that his seventh cause of action be dismissed (presumably as to the remaining defendants) without prejudice. Defendants have neither answered nor moved for summary judgment, and, therefore, Decraene's right under Fed. R. Civ. Pro. 41(a)(1) to dismiss the action without order of the court and without prejudice by filing a notice of dismissal endures. Kilpatrick v. Texas & P. Ry. Co., 166 F.2d 788, 792 (2d Cir. 1948). Although Decraene has not filed a formal notice of dismissal, the Court accepts his response to this motion as the equivalent and, accordingly, will dismiss his seventh cause of action as to the defendants other than Nagley and Bakhtiari without prejudice. Consequently, all that remains to be

adjudicated on this motion is whether the Court has jurisdiction over defendants Vonken and N-NV and whether Decraene's fourth and sixth causes of action should be dismissed for failure to state a claim.

I. Personal Jurisdiction

Defendants move under Fed. R. Civ. Pro. 12(b)(2) to dismiss Decraene's claims against defendants Vonken, a Belgian citizen, and N-NV, a Belgian corporation, for lack of personal jurisdiction. On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of establishing jurisdiction. In re Magnetic Audiotape Antitrust Litigation, 334 F.3d 204, 206 (2d Cir. 2003). Where, as here, no jurisdictional discovery has been conducted, allegations of jurisdictional fact must be construed in the light most favorable to the plaintiff, CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986), and the motion must be denied if those allegations suffice as a matter of law. In re Magnetic Audiotape, 334 F.3d at 206; PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997) ("A plaintiff facing a Fed. R. Civ. P. 12(b)(2) motion to dismiss made before any discovery need only allege facts constituting a prima facie showing of personal jurisdiction[,]" and courts must "construe the pleadings and affidavits in plaintiff's favor at this early stage."); see also Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996).

A federal court sitting in diversity may exercise jurisdiction over a foreign defendant if, first, the defendant is amenable to process under the law of the forum state, Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 105 (1987); Metro. Life Ins. Co., 84 F.3d at 567, and second, the exercise of personal jurisdiction comports with due process under International Shoe Co. v. Washington, 326 U.S. 310 (1945), and its progeny. See Arrowsmith v. United Press Int'l,

320 F.2d 219, 223 (2d Cir. 1963) (*en banc*) ("[T]he amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee."); see also Clarendon Nat'l Ins. Co. v. Lan, 152 F. Supp. 2d 506, 515 (S.D.N.Y. 2001).

New York law authorizes both general and specific exercises of personal jurisdiction over foreign defendants. N.Y. C.P.L.R. §§ 301–302; see generally Metro. Life. Ins. Co., 84 F.3d at 567–68 (explaining distinction between general and specific jurisdiction). General jurisdiction under N.Y. C.P.L.R. § 301 is established where a foreign corporation or individual "engages in a continuous and systematic course of doing business in New York." Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58 (2d Cir. 1985) (corporations); ABKCO Indus., Inc. v. Lennon, 377 N.Y.S.2d 362, 367 (Sup. Ct. N.Y. County 1975), modified 384 N.Y.S.2d 781, 784 (1st Dep't 1976) (individuals). To determine whether an entity is "doing business" in New York, courts look to "a traditional set of indicia: for example, whether the company has an office in the state, whether it has any bank accounts or other property in the state, whether it has a phone listing in the state, whether it does public relations work there, and whether it has individuals permanently located in the state to promote its interests." Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 98 (2d Cir. 2000).

Decraene has alleged no way in which Vonken, a Belgian citizen and resident and formerly the chief executive officer, chief operating officer, and chairman of the board of directors for N-NV (Vonken Aff. ¶¶ 2–3)—and, Decraene alleges, a director of N-US (Am. Compl. ¶ 9)—could be considered to be "doing business" in New York. The extension of

personal jurisdiction under N.Y. C.P.L.R. § 301 to Vonken would clearly be inappropriate.

As to defendant N-NV, Decraene alleges that N-NV is the one hundred percent owner of its United States subsidiary, N-US; that N-NV has covered the operating losses of N-US; that "[N-NV] asserts that it employs 650 people in the 'Neuhaus Group' which includes [N-US];" that an unspecified member of N-NV's board of directors is involved in the daily operations of N-US); and that one employee of N-NV, Erna Duts, was assigned to the corporate headquarters of N-US. (Id. ¶ 2; Decraene Aff. ¶ 11.) The Amended Complaint further alleges that Guy Pacquot, whom Decraene identifies as N-US's president, is the chairman of N-NV's board and is involved in the daily operations of both companies (Am. Compl. ¶ 3); that Claude Emery, an executive vice-president of N-US sits on N-NV's board; and that Vonken was, and defendant Jos Linkens now is, a director of N-US, in addition to holding positions within N-NV. (Id. ¶¶ 8, 9.) In effect, Decraene relies entirely on the parent-subsidiary relationship between N-NV and N-US, the latter of which concededly does business in New York, for jurisdiction over the former, and alleges no direct way in which N-NV itself is "doing business" in New York.

But a parent-subsidiary relationship alone is insufficient for this Court to acquire jurisdiction over the parent company. Instead, "[f]or New York courts to have personal jurisdiction . . . the subsidiary must be either an 'agent' or a 'mere department' of the foreign parent." Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184 (2d Cir. 1998). The "agent" standard requires that the subsidiary do "all the business which [the parent corporation] could do were it here by its own officials." Frummer v. Hilton Hotels Int'l Inc., 19 N.Y.2d 533, 537 (1967). Determining whether a subsidiary is a mere department, by contrast, involves consideration of "(1) common ownership and the presence of an interlocking directorate and

executive staff; (2) financial dependency of the subsidiary on the parent; (3) the degree to which the parent interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities; and (4) the degree of the parent's control of the subsidiary's marketing and operational policies." Porter v. LSB Indus., Inc., 600 N.Y.S.2d 867, 873 (4th Dep't 1993), citing Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120–122 (2d Cir. 1984).

Decraene has not alleged, nor do the pleadings construed in the light most favorable to him give rise to an inference of, an agency relationship. Decraene does not dispute that N-US acts as the importer, distributor, and seller of chocolate and confectionary products manufactured by N-NV. (Reydams Aff. ¶¶ 2–3.) Although under certain circumstances a separately incorporated subsidiary may be no more than a sales agent of its foreign parent, see Taca Int'l Airlines, S.A. v. Rolls-Royce of England, Ltd., 15 N.Y.2d 97 (1965), domestic sale of the products of a foreign manufacturer standing alone is insufficient to establish agency. See Jazini, 148 F.3d at 184 ("A foreign car manufacturer is not 'present' in New York simply because it sells cars through a New York distributor."). Nor has Decraene alleged facts sufficient to show that N-US is no more than a mere department of N-NV. Decraene has not contested the sworn affidavits submitted by various officers and directors of N-NV and N-US averring that N-US is, and always has been, an "independently operating and independently managed company" with "its own officers and employees," incorporated under the laws of the state of New York. (Reydams Aff. ¶ 3; see also Vonken Aff. ¶4; Emery Aff. ¶ 3 (noting N-US "has its own offices, telephone numbers, facsimile numbers, bank accounts, retail outlets and distribution system").)

The facts Decraene has alleged, moreover, are insufficient to show the pervasive control required under the "mere department" standard. That the two corporations shared certain directors and that one employee of the parent company was assigned to the corporate headquarters of the subsidiary are not dispositive. See Porter, 600 N.Y.S.2d at 873 ("There is complete stock control, and the directors and officers of the two entities overlap to an extent, but those factors are intrinsic to the parent-subsidiary relationship and, by themselves, not determinative."). Nor does Decraene's allegation that N-NV included N-US's employees in its tallying of "Neuhaus Group" employees suffice. See Bellomo v. Pennsylvania Life Co., 488 F. Supp. 744, 745 (S.D.N.Y. 1980) (portrayal of affiliate as part of unitary enterprise insufficient to confer jurisdiction on parent). Decraene's additional allegations that a director of the parent company was "involved" in the daily operations of N-US and that the parent company covered certain of N-US's operating losses are likewise insufficient; it is only "when the activities of the parent show a disregard for the separate corporate existence of the subsidiary, [that] New York jurisdiction may be asserted." Beech, 751 F.2d at 120. Although Decraene's allegations are fact-specific and not merely legal conclusions, cf. Jazini, 184 F.3d at 185, they do not amount to a prima facie showing of the control required to assert jurisdiction on the basis of the "mere department" test. Compare Taca Int'l Airlines, S.A., 15 N.Y.2d at 100–102 (subsidiary a mere department where sole business was sale and service of goods manufactured by parent corporation and, inter alia, subsidiary employees were trained by the parent, sales literature was produced by the parent, the subsidiary owned no inventory, but merely placed orders with the parent once a sale was made, and subsidiary was paid a fixed annual fee by parent to service manufactured goods under warranty) with Palmieri v. Estefan, 793 F. Supp. 1182, 1188–89

(S.D.N.Y. 1992) (affiliates, though commonly owned, were not mere departments even where jurisdictional discovery showed that parent approved major financial decisions, reviewed budget, controlled key personnel decisions, and guaranteed financial obligations of at least one affiliate). Accordingly, Decraene has failed to allege facts giving rise to the inference that N-US is either an agent or mere department of N-NV such that this Court could assert personal jurisdiction over the latter under N.Y. C.P.L.R. § 301.

Even where there is no jurisdiction under N.Y. C.P.L.R. § 301, however, jurisdiction may be proper under § 302(a), which authorizes New York courts to exercise jurisdiction over nondomiciliaries as to causes of action that arise from certain enumerated acts performed in New York, whether carried out personally or by agents, including the transaction of business. Id. § 302(a)(1). Again, Decraene does not allege any way in which either Vonken or N-NV transacted business in New York, apart from the parent-subsidiary relationship with N-US. But "[p]ersonal jurisdiction over a parent corporation whose subsidiary has transacted business in New York exists when the nondomiciliary parent corporation knew of and consented to the acts of its in-state subsidiary that gave rise to the cause of action, and 'exercised some control over [the subsidiary] in the matter.'" EFCO Corp. v. Nortek, Inc., No. 99-7660, 2000 WL 254047, at *1 (2d Cir. 2000) (unpublished opinion), citing Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467 (1988). Decraene has not alleged any involvement of either Vonken or N-NV in the facts underlying his surviving causes of action for breach of contract and unpaid compensation, let alone knowledge and control of those matters. Therefore, N.Y. C.P.L.R. § 302 is inapplicable. Since jurisdiction over these defendants cannot be maintained under either the general or specific prongs of New York's personal jurisdiction statute, the Amended Complaint must be dismissed

as to defendants Vonken and N-NV.

II. <u>Breach of Contract</u>

Defendants move under Fed. R. Civ. Pro. 12(b)(6) to dismiss Decraene's fourth cause of action—common law breach of contract—for failure to state a claim. This Court may only dismiss a complaint if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Patel v. Searles</u>, 305 F.3d 130, 135 (2d Cir. 2002) (internal quotation marks omitted). Decraene alleges that by terminating his employment without cause and failing to compensate him for accrued overtime, commission, and bonuses, defendants breached their contract of continuous employment. (Am. Compl. ¶¶ 25–26.) Defendants argue that Decraene's claim should be dismissed because Decraene was an employee-at-will, and, thus, defendants were entitled to terminate his employment with or without cause.

As a federal court sitting in diversity, this Court's determination of which jurisdiction's laws govern the claims asserted in the complaint is itself governed by New York's choice of law rules. See <u>Klaxon Co. v. Stentor Electric Mfg. Co.</u>, 313 U.S. 487, 496 (1941). With regard to contract claims, New York employs a "center of gravity" or "grouping of contacts" analysis which aims to identify the state with "the most significant relationship to the transaction and the parties;" factors to be considered are the places of contracting, negotiation, and performance; the location of the subject matter; and the domicile or place of business of the contracting parties. See <u>Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.</u>, 84 N.Y.2d 309, 317 (1994), citing Restatement (Second) of Conflict of Laws § 188(1) (1971). But where New York is the forum state and there is no material conflict between the substantive law of the relevant states, that is,

there are no differences that would affect the outcome at trial, "[a] court is free to bypass the choice of law analysis and apply New York law." Simon v. Philip Morris Inc., 124 F. Supp. 2d 46, 70 (E.D.N.Y. 2000), citing Curley v. AMR Corp., 153 F.3d 5, 12 (2d Cir. 1998).

Here, although New York and Texas are both employment-at-will jurisdictions, in which "employment for an indefinite or unspecified term is at will and may be freely terminated by either party at any time without cause or notice," Horn v. New York Times, 100 N.Y.2d 85, 90 (2003), citing Martin v. New York Life Ins. Co., 148 N.Y. 117, 121 (1895); see also East Line & R.R.R. Co. v. Smith, 10 S.W. 99, 102 (Tex. 1888), the two jurisdictions have recognized different exceptions to the traditional rule. Compare Horn, 100 N.Y.2d at 96 (the only two exceptions recognized by the New York Court of Appeals are express, unilateral promise by employer on which employee relied, Weiner v. McGraw-Hill, Inc., 57 N.Y.2d 458 (1982), and parties' mutual undertaking to practice law in accordance with a particular ethical standard, central to their common professional enterprise, Weider v. Skala, 80 N.Y.2d 628 (1992)), with Miksch v. Exxon Corp., 979 S.W.2d 700, 703 (Tex. App. 1998) (valid agreement altering employment-at-will status must be (1) expressed rather than implied, and (2) clear and specific). Since the variation in these exceptions to employment-at-will could lead to different outcomes, the Court must engage in choice-of-law analysis.

That analysis, however, is easy enough. Defendants urge the application of Texas law (D. Mem. 17), and it is clear that Texas is the state with "the most significant relationship to the transaction and the paties." Although N-US's corporate headquarters are located in Port Washington, New York, and many of the named defendants are employed there, Decraene resided in Texas, was interviewed and hired by N-US in Texas, and carried out his job

responsibilities for defendants, the subject matter of the alleged contract, almost exclusively in Texas, apart from one visit to defendants' corporate headquarters.

Under Texas law, where no definite term of employment is specified, the employment is presumed to be at will. That is, "either party . . . may put an end to it at will, and so without cause." East Line & R.R.R. Co., 10 S.W. at 102. Decraene does not allege that he was hired for a specific term, and, accordingly, his employment was prima facie at will. Employment-at-will status may be altered under Texas law, however, where there is an express, clear and specific agreement to do so that manifests the employer's "definite intent to be bound not to terminate the employee except under clearly specified circumstances." Montgomery Co. Hosp. Dist. v. Brown, 965 S.W.2d 501, 502 (Tex. 1998).

Contrary to defendants' assertion that Decraene failed to allege any "written contract, employment manual, oral agreement or other limitation on defendants' ability to terminate his employment" (D. Mem. 19), Decraene has alleged that defendants promised him "continuous employment and long-term profit sharing and other bonuses and company benefits so long as he should perform and meet his sales quotas and objectives." (Decraene Aff. ¶ 24.) This alleged promise of continued employment contingent on meeting clearly-identified particular performance standards, i.e., sales quotas and objectives, can fairly be understood to evidence an expressed intention not to terminate Decraene except under "clearly specified circumstances," i.e., failure to meet those quotas and objectives. Compare Brown, 965 S.W.2d at 502 ("[G]eneral comments that an employee will not be discharged as long as his work is satisfactory do not in themselves manifest such an intent."), with Miksch, 979 S.W.2d at 705 (supervisor's oral assurance that "the leasing and operation of [a competing dealership by plaintiff's spouse,

13

which would otherwise have violated the employer's conflict of interests policy] would not be a problem at all" for plaintiff's continued employment was sufficiently "specific and definite" to create a material issue as to whether plaintiff's employment-at-will status had been altered by oral agreement). As in Miksch, defendants' alleged promise does not "contain ambiguous terminology or require one to speculate as to the parameters of the parties' purported agreement." 979 S.W.2d at 705. Defendants' alleged promise is sufficiently clear and specific to permit the inference that defendants intended to modify Decraene's employment-at-will status, and defendants have not challenged this cause of action on any other basis. In any event, even if Decraene was employed-at-will, his claim for unpaid accrued pay and benefits states a claim for breach of contract. Accordingly, defendants' motion to dismiss Decraene's fourth cause of action for failure to state a claim is denied.

III. Fair Labor Standards Act

Defendants move to dismiss as untimely Decraene's sixth cause of action, brought under the FLSA to recover compensation Decraene claims is owed to him for "eight hundred and ten hours worked in overtime between August 23, 2001 and January 4, 2002." (Am. Compl. ¶ 31.)

FLSA claims are subject to the limitation period set forth in 29 U.S.C. § 255(1)(a), which provides that all causes of action accruing under the FLSA on or after May 14, 1947, must be commenced "within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." A cause of action under the FLSA for "unpaid overtime compensation" accrues "when an employer fails to pay required compensation for any workweek at the regular payday for the period in which the workweek ends." 29 C.F.R. § 790.21(b). Accordingly, a separate cause of

action accrued to Decraene on each regular pay day for a pay period in which his overtime work went uncompensated. See Shandelman v. Schuman, 92 F. Supp. 334, 335 (E.D. Pa. 1950).

Decraene filed his Complaint with the *pro se* office on February 13, 2004. See Chira v. Columbia Univ., 289 F. Supp. 2d 477, 484 (S.D.N.Y. 2003) (filing of complaint with *pro se* office, not docketing of the complaint, is the relevant date for determining whether claims are time-barred). Thus, to the extent plaintiff alleges only non-willful violations of the FLSA, any claims accruing prior to February 12, 2002, are time-barred. Decraene's last day of employment was January 4, 2002, and defendants therefore assert that Decraene's claims were time-barred as of January 5, 2004, over a month before plaintiff's Complaint was filed with the *pro se* office. (D. Mem. 11.) This is not strictly accurate; since the cause of action accrues when an employee is due to be paid, Decraene's final pay day presumably occurred on some date after January 4, 2002. The Complaint, however, does not provide any information on how often plaintiff was paid, or when his last regular pay day occurred. Assuming Decraene was paid on a biweekly or monthly basis, it is highly likely that his last regular pay day did occur prior to February 12, 2002, and that his FLSA claims of nonwillful violations are time-barred.

Regardless, defendants have entirely ignored the *three*-year statute of limitations for *willful* violations of the FLSA. The earliest date reached in the instant case for willful violations is February 12, 2001, some six months before plaintiff began his employment, and, thus, to the extent plaintiff has alleged willful violations, his claims under the FLSA fall entirely within the time period prescribed by the statute of limitations. A violation of the FLSA is willful if the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA] statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)

15

(adopting the standard of willfulness from Trans World Airlines v. Thurston, 469 U.S. 111 (1985)). Decraene alleges that defendants violated the FLSA "deliberately," in that [defendants] knew that [Decraene] ought to have been paid at the rate of one and one half times his forty hours weekly wage for all work performed over forty hours during any one work week." (Am. Compl. ¶ 40.) He also alleges that he submitted monthly statements to defendants detailing the amount of overtime he had worked, that despite receiving these statements, defendants never compensated him for that overtime, and that the Texas Workforce Commission later found that he was entitled to overtime pay. (Am. Compl. ¶ 31; Decraene Aff. ¶¶ 25–26.) The Amended Complaint thus clearly states a timely claim for willful violations of the FLSA. See Damassia v. Duane Reade, Inc., No. 04 Civ. 8819, 2005 WL 1214337, at *1-*3 (S.D.N.Y. May 20, 2005). Accordingly, defendants' motion to dismiss plaintiff's sixth cause of action is denied.

## CONCLUSION

All causes of action against defendants Nagley and Bakhtiari are dismissed on consent. All causes of action against defendants Vonken and Neuhaus, N.V. are dismissed for lack of personal jurisdiction.

Plaintiff's first (libel), second (slander), third (intentional infliction of emotional distress), and fifth (wrongful discharge) causes of action are dismissed on consent as against all remaining defendants. Plaintiff's seventh causes of action (mismanagement of a publicly owned and traded company) is dismissed without prejudice at plaintiff's request.

Defendants' motion to dismiss plaintiff's fourth (breach of contract) and sixth (FLSA violations) causes of action is denied. This matter remains referred to United States Magistrate Judge Ellis for further pretrial proceedings.

SO ORDERED.

Dated: New York, New York
June 3, 2005

_____
GERARD E. LYNCH
United States District Judge